My name is Josh Ebbitt and I represent the City of Idaho Falls and Idaho Falls Powers. I'm sitting in front of the Council Table in front of Ryan Farm Rooster, who is one of my law partners. In going through the Idaho statute tradition in this case, there seems to be one constant with respect to the authority a city has to do something as basic as providing electrical power to its citizens. And that is what those statutes essentially say to the city. The city, you have to do a good job in providing electricity to your citizens. The statutes of law... It seems to me, and I'm sorry to interrupt you, but it seems to me that you're agreeing with me that the city may only do what it wants to do in this case if given the right by the legislature. Would you agree with that? I would agree with that. So we're really, we're boiling down to an issue of statutory construction. We are. And we're really talking about what statutes we have in the Idaho Code and whether they will allow what your plan wants to do in this particular situation. Do you agree? I would, Your Honor, with the exception of there is an explicit exception to the general rule that a city can only condemn outside of its limits when it is given that, when it is given the explicit authority to do so by the legislature. Whether it's expressed in words or the power would be implied in or instant to the powers or they're essential to the accomplishment of declared objects and purposes, correct? Correct. And that's out of black? I'm sorry? That's out of black. We know. It's 1992. Correct. And it's also, the public utility exception is found in all the major authorities that discuss whether or not a city can exercise in the domain has an implied authority to do that in the circumstances presented by this case. That includes McQuillan, that includes Dillon, and that includes the Nichols Treaties. You would agree, wouldn't you, that there are statutes which specifically authorize extraterritorial power, but this one is not one. I would not agree with that. Well, you've got 5328, which grants the power to acquire land outside the seven limits for the purpose of constructing a cemetery. You've got 21401, which grants the city's power to construct and maintain aviation fields and airports and hangars and other aviation facilities outside of the city. But this particular statute, if we look at 7720, does not say outside of the city limits. Title VII, Chapter 7, which, as the Supreme Court has provided so repeatedly, is machinery. It's procedure. No, it does not specify a geographical scope, and it doesn't specify a geographical scope for any entity that possesses the authority to condemn whether inside or outside city limits. Well, McKinney v. Anselm, Anselmo, in the last 514, seems to state that cities don't have the power to do it extraterritorially. Do you agree with me on that? Your Honor, I would respectfully say that my recollection is that is not what McKinney says. And that was not a fact pattern to the procedure case. The issue of McKinney was whether or not a landowner could condemn property of a neighbor in order to get to a high-rise. Well, I understand what the statute or what the case was about, but it seems to suggest when you're reading it that cities don't have the power to do this extraterritorially. So I'm trying to find out where in the statute the state has suggested that the city of Idaho Falls have this power. It's the Revenue Bond Act, Your Honor. It's the Revenue Bond Act. It's Idaho Code Title, Section 50-1030, Subsection C. Well, before you get into that, I just want to make sure I understand your argument. I think Regent Smith started the questioning by saying, are we just talking about statutory construction? And he sort of said, yeah, but I mean, is there a constitutional argument you're making? Or is it saying once the legislature grants the right of eminent domain, these are the generally construed powers that go with it? Well, I mean, the only reason you get to Nichols and the other authorities is when we're talking about the general right of eminent domain. You're not making a constitutional argument, are you, of the city's power? It is provided by the Constitution. And Title VII, Chapter 7 and 7, 720, that authority to exercise eminent domain was given by the Idaho legislature to Idaho cities. Right. Go ahead. It is a bit of a difficult issue, and there really aren't any cases on it. But when you're talking about the state, and even when you're talking about things like sewer and irrigation districts, which is what the Pat Lakes case involves, the test truly is, under those cases, is the use a public one? Is it a use that benefits the public of the state of Idaho? And that's the end of the inquiry under Pat Lakes, for example, and under cases interpreting the state's ability to exercise eminent domain. So it's a very broad power. I understand the general power, but I mean, I guess I just want to make sure we're on the same page. And the way I understood this case is that essentially we're talking about statutory construction and the powers that flow from the powers given to the cities by the Idaho legislature. And you were about to get into the revenue bond. I was, because that, Your Honor, seems to be perhaps the clearest express grant of the authority in some sections. Go ahead and answer this. Sorry I diverted you from your answer, but I just wanted to make sure I understood it. I guess my first question about the Revenue Bond Act, I guess I'm trying to figure out why the Revenue Bond Act isn't allowing the city to finance acquisitions by issuing revenue bonds if other sections allow it to do what it can do. And the answer to that question, Your Honor, is the Viking construction case, which dealt with an identical Revenue Bond Act in a different setting. And the authority given by the Revenue Bond Act, it's all separate authority. There is no requirement in that act to, the legislature's not told cities, you can only exercise the authority to condemn, for example, if you're doing an association with issuing revenue bonds. Well, the reason I worry about this is this, and maybe I'm wrong. I understood that when we first put the Revenue Bond Act together, that in A, there was included a provision about poor condemnation and eminent domain, but it was taken out and we shifted it down to C. We did shift it down to C, Your Honor. C has always been there. No, I understand, but I understood that A had right in it a common condemnation eminent domain provision, but it was taken out. Correct. And in our view, the district court's decision in even analyzing the fact that language had been removed from the statute in 1967 is error. Well, some of us didn't write the statutes in Idaho, so let me make sure I understand. Too bad. Our loss. But the Revenue Bond Act, as I understand it, appears to authorize buying land to construct things outside of the city limits. Is that correct? It does. And it doesn't seem to me to make much sense to have that authorization and not have eminent domain also given the provision of the Constitution that you're talking about. Is that essentially your argument? That is essentially, yes, one of the arguments. Well, if we look really carefully at 501030 and we shift down to C, it says, to exercise the right of eminent domain for any of the works, purposes, or uses provided by the fact. Okay, so this is eminent domain. And then it adds some very important words. In like manner and to the same extent as provided in 7720. So it seems to me that what this says, if we're looking at eminent domain, that you don't get any more power than you got any place else in 7720. That you're not getting an extraordinary power by this act, you're just getting the right to do it if 7720 gives you the authority to do it. That's what that seems to do, in like manner and to the same extent. And so, again, I'm having a tough time seeing why the Idaho legislation is in there, all of their wisdom. I say that with a little bit of tongue-in-cheek. But put in a revenue bond statute, you're right to do this. And then I read the revenue bond statute and it says you can acquire by gift, or purchase, or construct. So you can go out and acquire, you can go out and annex, you can go out to the legislature and get this changed, you can annex the geography you want to condemn, you can have it gifted to you. But if you want to do by right of eminent domain, you're limited to what 7720 has to do. The problem with that argument, Your Honor, in our view, is that... It isn't our, it's a question. I mean, we're out buying statutory construction, and I'm trying to read this statute. And all my wisdom, I'm trying to determine what the legislature is saying. Right. The rule of interpretation is, you can't, by interpretation, read a clause out of a statute. And that is exactly what that interpretation does. Because, putting aside the final clause, the first clause clearly gives the authority to exercise it in a domain for any work permitted under the Act. And the work we're talking about in this case is a municipal electric system. And it is defined in 5029H as all of the municipal electric system, not pieces of it, not pieces that are just inside the city, but all of it. And so that's the problem with interpreting C in that way, is because it eviscerates the first clause. Well, why does it eviscerate? You have gift, purchase, and construct in the first clause. Here, we're not gifting, we're not getting it by gift, we're not purchasing it, we're not constructing it. We're condemning. And we ought not do that any differently than in 7-7-0. I'm going to answer that as, isn't the authority given in C arguably then the authority to exercise it in a domain with respect to works, existing works, works that are outside the city limits, including works that are outside the city limits, and are allowed to be there, expressive of the authority of the Idaho legislature. So, let's extend your argument. I mean, you say public works is a utility line, and you go over into Montana and condemn land in Montana, across the border here in Poland, condemn land there. I would not want to tread, and I would say probably not. That's a little extreme. Well, that's because, really, when you're talking about eminent domains, one of the, it's a vast power of the state, but it's confined because the state's saying, we are going to take your land. We're going to take your property. We're going to interfere with your property rights. And, therefore, the concept of territoriality becomes important because you say we are going to interfere with those property rights within our jurisdiction. It seems to me when you get out of the jurisdiction, then the power of the state municipality, or whatever entity it is, becomes weaker. What is the limit, if any, in the statutes on where you can build public works or power plants like this? There is a geographical limitation, but, of course, the limitation is going to be dictated by the work itself. I mean, there have been a parade of formalities in the case where if there's a ruling in favor of the city, then the city's going to be able to string a line up the court of land. That's not what the city wants to do. It's a burden on the legislature. Could it? I mean, I think... Well, that's a question... What's the limiting principle, though? That's what I'm trying to search for in your argument. If the city has the power to do this, where does that power stop, and how do we define it? It stops with respect to the infrastructure that's at issue in this case. Infrastructure just to the north of Idaho Falls. Infrastructure that's been there since the 1960s. The 44-kilowatt power that's been there since the 1960s. The transmission capacity is no longer sufficient to provide power to the city and accommodate its needs in the future. Existing works, that is the limiting factor here, if the court is searching for one. Well, under what authority does that build outside the city? Who owns the power plant? The city owns the power plant and the two existing substations, Westside and Sugar Mill. And so under what authority was that built, and what is the limiting principle for the construction of those? Is there one? No, the city is allowed to own property outside the city limits under the Idaho Code. That's not discrete. Right. So that just goes to the ownership? Right, that just goes to the ownership. Okay. There are alternatives, right? You would agree with me? City of Idaho Falls could, and the geography they need. They could, but there are always alternatives, and that's not really part of the test. And in Idaho, public entities are given the discretion to decide how to build their works, where to build them, how to improve them. If they have the authority under eminent domain. They could have got this stuff by gift or by purchase, but we're really talking eminent domain, and you're suggesting it's under the Revenue Bond Act. That C gives the authority, and also there is the implied authority to do it under the many authorities that both APR and the court cited in reaching its decision. Has there ever been a finding in any place that the extension would enable the city to provide power at the lowest possible cost? No. We wouldn't introduce that for you. Our questions have taken longer time, but we'll give you a couple minutes for questions. Thank you, Your Honor. We'll hear from the alliance. Thank you, Your Honor. Your Honor, may it please the Court, my name is Frank White. Director of the Counsel, Richard Herman, we represent the Alliance for Property Rights and the numerous family members that are members of that alliance. And we simply agree with Judge O'Donnell's decision. He made a very well-reasoned decision on this issue. This case... What would be practical for him? What's your beef with the city? Our beef with the city? Is it site? You don't want these unsightly power lines there, or what? That's part of it. This is farmland. These are farmers that use that land. They've got the state power lines going over it, and it makes it very difficult for them to be able to use that. You lost that farmland and its site that's out there. But perhaps even more importantly, it's the scarcity of the city to go outside of its regular jurisdiction and to tell people who live outside, people who get professional services, who doesn't allow these people to vote, doesn't allow them to do anything, to tell them, you have to let us put this across your property to benefit only us and the people who live in the city. And that's part of the beef that they have with this, is that they don't have any say whatsoever as to whether or not this system goes, we don't have any say as to the representatives that select them. Well, the reason I ask is that, I guess, to be blunt, this is a subable problem, because often one has to rise above principle and say, all right, as a practical matter, the city wants power, and maybe there's some other way to go to land, or maybe there's a price on it. You don't have to answer me what the paths of settlement are, but is, in your estimation, this a subable problem? Sometimes courts aren't the best way to settle these things. Well, there's nothing in the record to assess that, but I do know that the offers made to the landowners were nowhere close to where it ought to be. You've told me what I know. This is not my idea. Is that what you're asking? We have a mediation unit, and I was wondering whether or not that it was worthwhile to try to settle this problem, because a lot of these intricate problems take negotiation, and negotiation doesn't do... We're a yes or no. They have the power or they don't have the power. That's our question. But on the other hand, our mediation unit can sometimes work out solutions to problems that we can't, so that's why I was asking you whether it was subable or not. And I gather from your answer is yes, but everybody's far apart at this point. Yes, that's right. That would be accurate. This case originated in state court as a 42 U.S.C. 1983 claim was attached to that, and that's why the city moved it into federal court. And our argument is not that the city cannot condemn property for capitalizing. Our argument is about where they can do that. It seems to be undisputed by the city and really seems to be a nationwide standard that the authority of a city to engage in its activities is confined to a city limits generally. Where do I find that in the Idaho Code? I mean, I looked at 7720, and it says any municipality at its option may exercise the right of eminent domain for any of the following uses and purposes. And it's in 7701. And I look at 11, and it says electronic distribution, transmission lines for delivery, furnishing, distribution, transmission of electric power. There's nothing that says it's only in place where you have the power to do it. That's correct, Your Honor. It doesn't say one way or the other. So where do I find that the city cannot do it extraterritorially if it's statutory construction I'm looking at? Because I went, of course, to McKinney v. Al Thelma. But I'm trying to figure out where do you go? Well, McKinney is, of course, a good case. If you look at the many decisions of the Idaho Supreme Court interpreting municipal powers, it's very clear that the Court has said that a city is a classic example of derivative power. That power is only what is expressly granted by the legislature or which can necessarily apply from those express grants of power. And from that comes the answer that a city only can do what it's told it can do. Yeah, but there's no question that the city can buy land and that this is a public use, the provision of electric power to increase its citizens. And there's no question that it can buy the land, purchase the land for that purpose, right? There is no... Your Honor, that's correct. There is no question that the city can purchase this property and that generally the installation of the power lines would be public use. And so does it really make sense to say that they have this power station that's producing the power and they have the people who need the power and they can buy the land, they have the power to buy the land, but does it make sense to say they can't use eminent domain? Is that a logical decision for the legislature? Your Honor, I can see some logic. I come from a state that has done some legislative audits as well, but I'm just trying to see what... If you were a reasonable legislature, why would you do that? Why would you allow the purchase but not the confirmation? Partly because what we've addressed in our alternative arguments about the constitutionality of the city stepping outside of its boundaries to condemn property of people who have no say in that city's government, no say and don't receive any services in that city. And then to not only bring that for the benefit of the city members, but it wholly excludes that same group of people from being able to access or utilize that benefit at all. And so it makes sense that the legislature has granted the power to municipalities to exercise eminent domain, but to stay within their boundaries. That's where the people who live in that boundaries get to vote and elect the government, get to operate that government through their elected representatives. The step outside of that box is turning on rights of people who have no say. But the Supreme Court has upheld the use of eminent domain for projects that don't benefit the people whose land is being condemned, has it not? They have not. And our distinction is a subtle distinction from that in that this goes a step further and it not only just doesn't benefit them, but they are excluded from it. Because in Idaho, a municipal power company can only sell power to the people who live within its borders. With one exception, it can't sell to other power companies. They cannot sell to customers outside of the city limits. So those landowners are not only people who don't receive that benefit, but they are wholly excluded from receiving that benefit. What does that mean there? Because as you know, in some circumstances, it's a private right of eminent domain. Of course, nobody's voting in those circumstances, and it may or may not confer any benefits. Does it really make any difference in terms of eminent domain theory? I mean, I can understand the social argument and saying, look, we ought to be able to vote on this and you're outside your jurisdiction. But on the other hand, isn't the focus of eminent domain theory the public work itself rather than whether or not anybody voted to have the public work go forward? Here are the differences in the nature of who's going to take it. You know, a private citizen, there are many things that a private company or a private citizen can do that a city cannot. I can go across the street and borrow $50 from my neighbor if I want to. The city can't do that unless it has a statute that says it can go borrow money through a monitor or whatever it means. Cities aren't governed by legal principles that are expressly granted to them by the legislature. And if there are some things that are necessarily implied from those expressed principles, then they can do those other things also. Now, keep in mind, we have a Supreme Court, which is the standard that this Court has to apply, is I hold my eyes to apply the indecisions of the Idaho Supreme Court to that. The Idaho Supreme Court has said that these implied powers must be indispensable, not just merely beneficial or helpful, but they must be indispensable to the power that they seek to enforce. Well, I know Paul's argument. Look, I know you can drag out the phrase horribles, but really what we're talking about is existing facilities, and there should be at least some implied right, even if it's not within the statute, that we have. We can conduct the power of government of the domain, enforce the power of government of the domain, to create public works or access to public works for existing facilities. Now, why doesn't that make sense in terms of the statutory construction? I guess with all respect, Your Honor, that that isn't the case in this case. The city does own some power plants that are south of the city. There's two of the south. They also have a dam up kind of north of the city, and they want to build another plant north of the city. The plant up north doesn't exist yet. What this project that they're wanting to connect the property for is for new infrastructure, for new lines that connect from these power, from this station up to what would be a new station, and back around down to the other station. So we're not talking about existing infrastructure. Okay. Leaving aside the factual dispute, let's just hypothetically say that it only involves existing facilities. Why wouldn't that be a reasonable statutory instruction? In fact, Your Honor, the city does not require to provide a municipal power of government. This is a voluntary activity that the city engages in. In fact, Iowa Falls is one of only a very small and few communities in Iowa that has its own power of government. And so they're not required to engage in this conduct at all. Now, the city chooses to go outside of this and to construct a power plant. Could they build a power plant inside their city, somewhere? Of course they could. They have the power to come and land within their city. They could build that inside the city. They're not forced to go outside the city to acquire this property to build their infrastructure. Now, the state and the city can now, by going out and engaging in a voluntary act of acquiring the property, and now by doing that, establishing a right of eminent domain that did not otherwise exist, goes a little far. The city can voluntarily act, create something that an act of the legislature did not create. And so there's... Why should the city be given any more benefit than a private party to purchase this property? Certainly, I would want to make sure that I use the property for the reason that I bought it before I bought it. If the city wants to be able to access that, have that property outside the plant, then they should ensure they have the means to get it there first. To say that just by going out and getting a power plant in the domain seems to fly in the face of the standards that apply here. There are important standards that the out-of-state courts announced that practically are dispositive of these issues. And Judge Wendell seemed to agree. First of all, Judge Wendell concluded that these statutes did not expressly provide this power. It's just not there. And Judge Smith is complementing on that, and there's not something I can expand on. But the out-of-state court has also said that if there's any fair, reasonable doubt that the existence of these powers is an implied power, then it must be issued against the city. And here, there's doubt all over the place as to whether or not the city has that power. And that's not a disputed standard. In fact, that's a standard that's existed in Idaho for 100 years. And I find that in cases across the country. I'm wondering why it is you're opposing this, certifying it over to Justice Burdick and his colleagues. I mean, take nothing away from these two. They are much higher in authority than I am in this court. No question. But they're not eyeing on us. We've got a Montana and an Arizona, and we've got me. And we're going to be judging an Idaho issue. Why is it you didn't let us just send this over to Burdick and plan it and let them decide it? Your Honor, frankly, when we were below within the district court, Judge Windmill specifically offered the party. He said, I recognize whoever loses this case is going to repeal it. And he told us, if you want me to set this up so that it goes to the Idaho Supreme Court, let me know, and I can certify the question to the Idaho Supreme Court. Otherwise, we'll move forward with some of your judgment. Your party asked for that. The city didn't ask for it. The city wanted to go ahead and have the federal courts decide this issue. We were fine with that, even though we started in state court. We're comfortable with the federal judiciary making accurate decisions. Because when it comes down to it, we're talking about words and statute. But we are not. What we say in Idaho really won't have a whole heck of a lot of difference. I mean, the Idaho Supreme Court could look at what we say and say, below me, the next time through. Why not give a definitive opinion about that? Your Honor, that is a good point. I can't argue that that's not a good point. However, I thought you were going to argue that that's fine if we're not finally deciding the question of the Idaho law for all time. But we are here now, and the case is getting old, and it's easy to decide. That was exactly what I was going to say. Fine. I'm Judge Schroeder. Where are you? Although, I would think about it. You could say, well, sure, certify it to the Idaho Supreme Court. There's another year. It's not developed. Our clients are in the city with a lot of resources. Our clients are farmers who live outside of the city limits, and they want to get this case done as quick as they can because it's very expensive. We go to the Idaho Supreme Court. We have another briefing. It goes all through. There's just no reason to do that. The city had the opportunity to do that. They rejected it. I don't know. I imagine the court has read our brief opposing certification. We identified a number of cases that say that it's just not appropriate. You think Judge Wooden got it right anyway? Of course. One of the limits tests I use in looking at certification issues, is this a recurring problem for which the litigants in the state need an answer? I guess I'll pose that question. Is this a recurring situation? I'll ask your colleagues in the city the same thing. The lack of any definitive case law. I think my answer, I'm not aware of any other incident where an Idaho city tried to step outside of its jurisdiction to condemn landowners for something that is not specifically authorized by statute. And I think that's another important point, Your Honor. And Judge Smith, I believe, brought that up before, was the Idaho legislature. Sophia was named after these statutes. And mind you, these statutes were all amended on the same day in court. And they gave cities the authority for cemeteries to step outside of the city limits to condemn property. They gave authority to airports to step outside the city limits to condemn property. But when they talked about power lines, they didn't say that. They just said that you have the ability to own that property out there. They did not specify that cities get the power to condemn property. We go to the Rev. Bond Act, which is exactly that. It's the Rev. Bond Act. Now, the city says that it provides an express grant. Judge Lindenholm concluded otherwise, that there is no express grant. And we have to point out and look at what the statute actually says. You look at subsection A, which is the one that talks about land within or without the city. And I see him out of time. Just to finish your answer. It says that they can acquire property within or without the city. It says by gift or purchase. Now, the prior version of the statute, which I don't think was inappropriate for Judge Lindenholm to get to, because if Judge Lindenholm's interpretation is reasonable, then theirs is reasonable, and we have an ambiguous statute to look at the construction, we can certainly look at prior versions of the statute at that point. The prior statute took out the exact phrase that the city wishes was still there. The phrase was, I'm going to paraphrase it, but it says that you can purchase this property by gift, purchase, or by an exercise provided in the domain. That last clause was omitted in the manner of the statute. All along, that statute had subsection C, that provided the procedure for going back to subsection 7-726. Now we've added all these works that we've defined into that list for which you can go in and domain under 7-726. Thank you, counsel. Thank you. I'll give you two minutes for a vote. Thank you. I want to leave off with that point, which is that the way that rule was applied in this case, it was applied around Judge Lindenholm's case. It was applied around his case. Judge Lindenholm, in interpreting those 1967 changes, expressly said, I'm going to give meaning to words that are no longer in the statute, that is not how it will be used. I want to talk really briefly about airports, Judge Smith, to try to address some of your questions. That airport authority is interesting. It's found in 50-321. It's interesting because, for a couple of reasons, the statute doesn't even use the words eminent domain. It ends up being held up as a model of clarity of the grand eminent domain of the city to condemn land outside of its limits to build an airport. It says that a city can take over land. It doesn't refer back to Title VII, Chapter VII. I think that kind of contradicts this idea that C can't say, can't grant this power differently than is granted in other parts of the Idaho Code. My other point with respect to airports is there is no authority in that statute to build roads at the airport. There is no authority in that statute to build, for example, transmission lines at that airport. Are we really expected to believe, because I think the analysis in this case by APR would lead to this conclusion, that there is no way to connect that airport to the city once it is built outside city limits. And that gets back to your comment on Title VII, Chapter VII, which is that part of the Idaho Code gives the authority to condemn to build roads. It gives the authority to condemn to build transmission lines and distribution lines. So I think that's an important statute to look at for those reasons. How has this power got indispensable to the ability of the city to do its job? The comment about the city volunteering or doing it with its own free will, the providing of municipal electric power, I kind of understand that. But the reality is that Idaho legislation commands this city, the city of Idaho, falls to provide reliable and economic power to its citizens under 5302. It has to exercise specific powers to benefit the general welfare of the city. And the city in this case can't do that. It doesn't have enough transmission capacity and it wants to improve it. Thank you. Thank you, counsel. Thank you both for your arguments and your briefings on this matter, which will be submitted. We will shortly be in adjournment. I want to thank the audience for your kind participation. I want to thank Judge Smith for organizing this and allowing us the privilege of being here. And we will be in recess. All rise.
judges: Schroeder, Thomas, Smith